Parker, J.
The general rule is, that all a party has said, which is relevant to the questions involved in the trial, is admissible in evidence against him. The exceptions to this *22 rule are where the confession has been drawn from the prisoner by means of a threat or a promise, or where it is not voluntary, because obtained compulsorily or by improper influence. It is not claimed in this case that the statement in question was obtained by means of any promise or threat or by any inducement whatever; nor is it supposed that there was any compulsion or any influence affirmatively exercised upon the mind of the prisoner, beyond what is sought to be inferred from the fact that he was required to testify as a witness. But it is contended that because he was so required to testify, upon a general inquiry into the cause of the death of his wife, his statement was not voluntary and should have been excluded. The record shows that the objection at the trial 'was placed only on the ground that the statement was not voluntary. Hendrickson was not in custody. He made no objection to being sworn as a witness or to answering any question that was put to him. He was treated, in every respect, like the other witnesses. At the time of his examination, no circumstances had been developed warranting a suspicion against him. The post mortem examination did not take place till the next day, and it was not until the second day after his testimony before the coroner’s inquest that he xvas arrested under a warrant, issued, not by the coroner, but by a police justice of the city of Albany. His statement as a witness was in no respect an admission of guilt. On the contrary, it was a denial of material facts attempted, on his trial, to be established by other witnesses. His testimony was calculated to ward off suspicion from himself, not to attract it towards him. The question presented, therefore, is, whether, under the circumstances, the statement of a witness is to be excluded on the ground that it was not voluntarily made. Several English nisi prius decisions were cited on the argument, which it is necessary to examine.
Merceron's case (2 Starkie, 366), decided in 1818, was an indictment against a magistrate for having corruptly and improperly granted licenses to public-houses which were his own *23 property. .Abbott, J., permitted the prosecution to prove what the defendant had said in the course of his examination before a committee of the House of Commons, appointed for the purpose of inquiring into the police of the metropolis, though it was objected that the statement had been made under a compulsory process from the House of Commons, and that the declarations were not voluntary.
In the case of Haworth (4 Carr. & Payne, 254), decided in 1830, it appeared that, before the prisoner was charged or suspected, a person named Shearer had been examined on the charge of forgery, and that the prisoner was called as a witness and his deposition taken. The counsel for the prosecution proposed to read this deposition as evidence against Haworth, which was objected to. Justice J. Parke said: “ I think that I ought to receive this evidence. The prisoner was not, when he made this deposition, charged with any offence, and he might, on that as well as on any other occasion when called as a witness, have objected to answer any question which might have a tendency to expose him to a criminal charge; and not having done so, his deposition is evidence against him.”
In a note by the reporter to this case it is said that, in a case tried at Worcester, where it appeared that a coroner’s inquest had been held on the body of A, and it not being suspected that B was at all concerned in the murder of A, the coroner had examined B upon oath as a witness, Parke, J., would not allow the deposition of B, so taken on oath on the coroner’s inquest, to be read in evidence on the trial of an' indictment afterwards found against B for the same murder.
I cannot find that this anonymous case is anywhere reported more fully. It would be much more satisfactory to know the particular circumstances of the case and the grounds for the decision. Without them, it is entitled to but little weight as authority. And so it seems to have been viewed by Littledale, J., in the case of Rex v. Clewes, tried before him during the same year, and reported, as to other *24 points, in 4 Carr. & Payne, 221. In Mr. Greaves’ note, w (2 Russ. on Cr., 860, 7th Am. ed.), on the authority of his manuscript notes, he says the grand jury asked Littledale, J., “ Can evidence of a prisoner, who was examined on oath before the coroner as a witness, be admitted as evidence against the same person when subsequently indicted for the murder of the person on whose body the inquest was held ?” Littledale, J., answered in the affirmative; when, the case referred to in the anonymous note being mentioned, the judge (Littledale) directed the grand jury to receive the evidence and leave the point for discussion on the trial.
Tubby’s case (5 Carr. & Payne, 530), tried in 1833, was an indictment for burglary. Andrews, for the prosecution, proposed to read a statement made upon oath by the prisoner at a time when he was not under any suspicion. Prendergast objected that it was a violation of the rule of law which held that a prisoner could not be sworn. Vaughan, B., said: “I do not see any objection to its being read, as no suspicion attached to the party at the time. The question is, is it the statement of the prisoner under oath ? Clearly it is not, for he was not a prisoner at the time he made it.” In Rex v. Lewis (6 Carr. & Payne, 161), decided also in 1833, several persons, one of whom was the prisoner, were summoned before the committing magistrate touching the poisoning of C. No person was then specifically charged with the offence. The prisoner was sworn and made a statement, and at the conclusion of the examination she was committed for trial. It was held that this statement was not receivable in evidence against the prisoner. Gurnet, B., said this case was quite distinguishable from that of Rex v. Tubby, and that under the circumstances he should have agreed with his brother Vaughan; “but,” he said, “this being a deposition made by the prisoner at the same time as all the other depositions on which she was committed, and on the very same day on which she was committed,' I think it was not receivable. I do not think this examination *25 perfectly voluntary.” It has been supposed the prisoner was brought before the magistrate on a charge or suspicion of guilt, but Mr. G-reaves says in his note (2 Russ. on Cr., 857, note n, 7th Am. eel.) that he was counsel in this case, and that the prisoner was summoned in the ordinary way, as a person who could give some evidence touching the matter, and not because any suspicion attached to her. In Rex v. Davis (6 Carr. & Payne, 177), also decided in 1833, the daughter had been examined as a witness before the committing magistrate against her father, and was then committed as a joint receiver of stolen goods with him. Her statement was excluded as evidence against her on her trial, by G-üENEY, B., on the same ground as in Rex v. Lewis. In regard to this case, Mr. G-reaves says (2 Russ. on Cr., 857, note n, 7th Am. ed.) that the ground of the decision was, not that there was a suspicion in the mind of the magistrate, nor even that the prisoner might be aware that there was such á suspicion, but that the prisoner had been examined on oath as a witness; and says that, after the decision in the late case of Rex v. Wheater (to which I shall refer hereafter), it may be doubted whether that was a sufficient reason for rejecting the deposition. In Regina v. Wheeley (8 Carr. & Payne, 250), decided in 1838, a party who was charged with murder made a statement before the coroner at the inquest, which was taken down. The paper purported that the statement was made on oath. Aedeeson, B., held, on the trial of the party for murder, that the statement was not receivable, and that parol evidence was not admissible to show that no oath had in fact been administered to the prisoner. If this was a case of the examination of a prisoner, and not of a witness, as it has been understood to be by commentators (2 Russ. on Cr., 855, 860, and notes), its correctness will not be questioned, and it can have no bearing upon the question now before us. The next case in order • of time was Regina v. Wheater (2 Moody's Cr. Cas., 45), decided in 1838, which was an indictment for forgery. On *26 the trial, before Coleridge, J., the examination of the prisoner, previously taken on oath, as a witness, before the commissioners of bankruptcy, concerning the bills alleged to be forged, was held admissible as evidence against him. The opinion of all the judges was desired on this point, and the case was argued before all the judges except Park, J., and Gurney, B., who held that the evidence had been properly received. In Regina v. Owen et al. (9 Carr. & Payne, 83), tried in 1839, the defendants were indicted for rape. The prosecution offered to prove the statements made by Owen on oath, at the inquest held on the body of the person ravished, while the defendants were in custody. The counsel for the prisoner admitted that, where witnesses had been examined voluntarily, their depositions might afterwards be read against them, but objected that these defendants were in custody, and cited the case of Wheeley, where Baron Alderson rejected the deposition because it was on oath and taken while in custody. But Williams, J., said: “ I know that my brother Alderson did so, but I also know that there has been a reaction in opinion, if I may be allowed the expression. I shall therefore receive the evidence, and reserve the point, if it shall become necessary.” It is said that Baron Alderson, who had tried Wheeley's case, was in the next court at this time, and that Williams, J., had consulted with him in an earlier part of the case. (Joy on Confessions, 62.)
In Regina v. Owen and others (9 Carr. & Payne, 238), the same defendants were tried in 1840 for the murder of the person ravished; and Gurney, B., refused to receive in evidence the depositions, on oath, of the prisoners taken before the coroner’s inquest, though it must have been known they had been received on the previous trial of the same prisoners for rape. Baron Gurney, however, cited Wheater's case, then recently tried before Coleridge, and admitted he could not, on principle, see the distinction between that and some of the other, cases. In the late case of Regina v. *27 Sandys (1 Carr. $ Marsh., 345), decided in 1841, the prisoner was tried for murder, and Erskine, J., admitted in evidence her deposition taken at the coroner’s inquest, and reserved the points for the consideration of the fifteen judges. All the decisions to which I have referred, except that in the case of Wheater, were made at nisi frites, and their general current is certainly in favor of the admissibility of the evidence in question; but to give them, or any of them, much weight as authority, it is necessary to understand the reasons that governed, and to see on what principles they are based. Without that, decisions made at the assizes, necessarily without time for consultation and examination, can avail but little in deciding a controverted question of law. So far as the evidence was rejected on the ground that the statement was on oath, as in the case of Davis and others, it must now be regarded as settled by the decision of all the judges in Wheater's case, above cited, that that, of itself, constitutes no objection. Mr. Joy, in his treatise on the admissibility of confessions, reviews all the decisions at nisi prives apparently conflicting, and comes to the conclusion that the decision, by all the judges, in Wheater's case, establishes the principle that a statement, not compulsory, made by a party not at the time a prisoner under a criminal charge, is admissible in evidence against him, although it is made upon oath. (Joy on Confessions, %% 8, 62.)
It is now regarded as a well settled rule, and recognized in the elementary books, that where a witness answers questions upon examination on a trial tending to criminate himself, and to which he might have demurred, his answers may be used for all purposes. (2 Stark. Ev., 50; Roscoe’s Cr. Ev., 45.) Such answers are deemed voluntary, because the witness may refuse to answer any question tending to criminate him. (1 Greenl. Ev., % 225.) If, however,he should be compelled to answer, after claiming his privilege, his answer will be deemed compulsory and cannot be given *28 in evidence against him. When the evidence offered has been rejected on the ground that the statement was made when the prisoner was in custody charged with crime, as in Wheeley’s case and Owen’s case, it seems to me clear that it was properly excluded, because these were cases of the examination of a prisoner, not of a witness. In such cases it is a judicial examination, and it should not be on oath, and certain precautions for the protection of the accused are always to be observed. In this state such examinations are regulated by statute. (2 R. S., 794, 2d ed.) But neither is the statute, nor were the common law rules of which it is declaratory, applicable to any examina* tion except that of a person brought before a magistrate on a charge of crime. All other examinations are classified as extrajudicial (1 Greenl. Ev., § 216), and are to be conducted like other cases of the examination of witnesses. It is evident that in deciding the case of Lewis, above cited, the mind of the presiding judge was influenced, to some extent, by the supposition that the facts peculiar to it gave to the testimony the character of a judicial examination; for Baron Gurney lays stress upon the facts that the deposition was made at the same time as all the other depositions on which she was committed. In both these resemblances to a judicial examination, the case of Lewis differs from that now before us; for Hendrickson was arrested on a complaint made before a different magistrate and on a subsequent day. It is unnecessary, therefore, to express an opinion as to the soundness of the reasons given by Baron Gurney for his decision in the case of Lewis. The examination of a witness before a coroner’s inquest bears even less resemblance to a judicial examination than that taken before a committing magistrate or a grand jury. A coroner’s inquest may be held in all cases of sudden death; but an examination before a committing magistrate or a grand jury takes place on complaint made that a crime has been committed. It is only where a person is charged with crime, and is examined *29 with regard to the truth of such charge, that his examination can be considered judicial.
In the case of the State v. Broughton (7 Iredell, 96), decided in North Carolina in 1846, where the grand jury were investigating an offence with a view to discover the perpetrator, and the person who was subsequently indicted was examined before them on oath, and charged another with the commission of the offence, it was held that the examination might be given in evidence against the prisoner on the trial of his indictment. Ruffin, Ch. J., said, however, that if the evidence given by the prisoner had been a confession of his guilt, and the grand jury had found a presentment on it, the court would have held that it could not be given in evidence against him. It is not material to the decision of this case to inquire whether the chief justice was right or not in the distinction he made between a confession, and a statement not a confession, because neither in that case nor in the one now before us was there any confession. Both statements tended to turn attention away from the witness. I am inclined, however, to think the chief justice erred, in the case of Broughton, in the reason assigned for his decision; for the law seems to be, that the rule as to confessions applies not only to direct confessions, but to every other declaration tending to implicate the prisoner in the crime charged, even though in terms it is an accusation of another, or a refusal to confess. (1 Greenl. Ev., § 219, note 2, and cases cited.) But while the decision in the case of Broughton is in accordance with the ruling in the case before us, the reason given for that decision, if it be erroneous, does not conflict with such ruling. Independent of any supposed authority, I do not see how, upon principle, the evidence of a witness, not in custody and not charged with crime, taken either on a coroner’s inquest or before a committing magistrate or a grand jury, could be rejected. It ought not to be excluded on the ground that it was taken on oath. That reason would exclude also the statements of witnesses *30 on the trials of issues. The evidence is certainly none the less reliable because taken under the solemnity of an oath. No injustice is done to the witness, for he was not bound to criminate himself, nor to answer in regard to any circumstance tending to do so. If it is a good ground of exclusion, that the statement was made as a witness on oath, then the rule of law that protects a witness from criminating himself is of no value, and may at once be abrogated. The rule was adopted upon the supposition that the answer might be introduced in evidence against the witness. If it cannot be, the witness has no longer any reason for claiming his privi-. lege. Nor can the éxclusion of the evidence depend on the question whether there was any suspicion of the guilt of the witness lurking in the heart of any person at the time the testimony was taken. That would be the most dangerous of all tests, as well because of the readiness with which proof of such suspicion might be procured, as of the impossibility of refuting it. Besides, the witness might have no Knowledge of the existence of any suspicion, so that his mind could not be affected or his testimony influenced by it. It is only when he is charged with crime, and examined on such charge, that there is good reason for treating him as a party to the proceeding. The common law has been as tender of the rights of witnesses as of parties. It is the policy of the common law never to compel a person to criminate himself. That policy secures as well to a witness as to a party the privilege of declining to answer. The former is supposed to know his rights; the latter is to be specially instructed in regard to them by the presiding magistrate. But if either fail to avail himself of the privilege, his answer is deemed voluntary, and may be used as evidence. It is only upon a judicial examination, viz., in the case provided for by statute, when the prisoner is brought before a magistrate, charged with crime, that the preliminaries required by the statute are to be observed and the examination taken without oath. All other examinations are *31 extrajudicial. The former is the examination of a party; the latter of a witness. In all cases, as well before coroners’ inquests as on the trial of issues in court, when the witness is not under arrest, or is not before the officer on a charge of crime, he stands on the same footing as other witnesses. He may refuse to answer, and his answers are to be deemed voluntary, unless he is compelled to answer after having declined to do so; in the latter case only will they be deemed compulsory, and excluded. Applying these rules to the case before us, Hendrickson’s answers before the coroner’s inquest were voluntary, and were properly received as evidence against him.
The second ground on which the prisoner asks a reversal of the judgment is, that the will of Lawrence Yan Deusen, the father of the deceased, was improperly admitted in evidence. This evidence was received as bearing upon the question of motive. If it tended in the least to show that the prisoner-had been disappointed in the pecuniary expectations he had entertained from his alliance with the family, in not being able to realize them till after the death of his wife’s mother, and then not in an equal proportion with the brother; or, if it tended to show how little property he might expect from his wife, if she lived; in either case, whether the supposed motive was resentment or avarice, it was properly received. It was competent to show whether the prisoner would gain or lose by the death of the deceased, and to compare the small amount, expected to be realized at a distant day, with the intermediate burthen of her maintenance. Taken in connection with the previous testimony, tending to show a want of affection on the part of the prisoner towards his wife, this evidence was clearly admissible. Considerable latitude is allowed on the question of motive. Just in proportion to the depravity of the mind, would a motive be trifling and insignificant which might prompt to the commission of a great crime. We can never say the motive was adequate to the offence; for human minds would *32 differ in their ideas of adequacy, according to their own estimate of the enormity of crime, and a virtuous mind would find no motive sufficient to justify the felonious taking of human life. I think the evidence of the will was properly received. It was the province of the jury to determine the weight to which it was entitled. My conclusion is, that there was no error committed on the trial, and that the judgment of the supreme court should be affirmed.
Buggles, Johnson, Denio and Edwards, Js., concurred.